SIGNED THIS 2nd day of July, 2025

THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

In re:  
STEVEN LEON SORRELLS,  
CHRISTINA JOHNSON SORRELLS,  
    Debtors.

Chapter 13  
Case No. 21-50632

## MEMORANDUM OPINION

The question for this Court is whether to grant the trustee's motion to modify the debtors' confirmed chapter 13 plan over the objection of the debtors. The trustee moves to modify the confirmed plan because one of the debtors (Steven Sorrells) received an inheritance during the latter months of the plan term. The debtors oppose the motion to modify arguing they have not experienced a substantial and unanticipated change in financial condition.

### JURISDICTION

This Court has jurisdiction over this bankruptcy case by the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This is a proceeding to approve a modification to a confirmed plan and requires considerations like those for confirmation of a plan. Under 28 U.S.C. § 157(b)(2)(L), "confirmations of plans" are core proceedings. In this manner, approval of a postconfirmation modification is a core proceeding.

**BACKGROUND**

In 2021, Mr. Sorrells was self-employed cooking and selling barbecue from a trailer. *See* Ex. 7b at 26, ECF Doc. No. 49-2. He operated through an LLC. *See id.* He also had part time employment income as a cook at a restaurant. *See id.* at 27. Mrs. Sorrells worked at a truck stop as an accountant. *See id.* at 26. In December 2021, they filed a joint chapter 13 bankruptcy case in this Court. *See* Ex. 7a, ECF Doc. No. 49-1.

Mr. and Mrs. Sorrells' household income is under the median income for a household of their size. *See* Ex. 7b at 47–49, ECF Doc. No. 49-2. They have primarily consumer debts. *See id.* at 35. Their statutory applicable commitment period is thirty-six months, but they proposed a chapter 13 plan with a term of fifty months. *See id.* at 47; Ex. 7d at 2, ECF Doc. No. 49-4. The plan provides for satisfaction of a tax debt, cure of an arrearage on their mortgage, satisfaction of some allowed secured claims, plus a thirty-nine percent dividend to holders of general unsecured claims.[1] *See* Ex. 7d at 3–4, 6, ECF Doc. No. 49-4.

The Court confirmed their plan in April 2022. *See* Ex. 7e, ECF Doc. No. 49-5. They have performed under the plan, and as of May 2025 they have $14,913 remaining due under their plan, or approximately ten monthly payments remaining. Stip. at 2, ECF Doc. No. 50 [hereinafter "Stip."].

In June 2024, Mr. Sorrells's mother, Alice Sorrells, died. *See id.* at 3. Her daughter (Mr. Sorrells's sister) was appointed executrix. *See* Tr. at 39, ECF Doc. No. 53 [hereinafter "Tr."].

At the time of her death, Alice Sorrells owned real estate and personal property. Stip. at 4. Mr. Sorrells believed his mother's property was to be divided among the children and grandchildren such that he would receive 1/6th of her estate. *See* Tr. at 22–23. As he recalled,

---

[1] The plan distributes $29,200 to holders of allowed priority and general unsecured claims. Stip., ECF Doc. No. 50 at 2.

"it was supposed to be the two of them [his sisters] getting a third each and me and my son getting a sixth each." *Id.* at 23. He stated that he met with his attorney in November and alerted him of the inheritance and that it was uncertain how much he would receive or when he would receive anything. *Id.* at 16–17, 22 ("I didn't know how much she owed on her house or how much was in her accounts or anything like that."). In January 2025, Mr. Sorrells amended his schedules. *See* Stip. at 3. He testified that he did not see a copy of the will until the trustee produced it during the trial in May 2025. Tr. at 21.

In addition to a claim to his mother's estate, Mr. Sorrells received funds from his mother's 401(k) retirement account that were transferred to him in the form of an IRA after his mother's death. *See* Tr. at 15–16; Stip. at 3. In February 2025, Mr. Sorrells withdrew the entire balance of the IRA, paid the state and federal taxes and penalties, and received the net amount of $26,236.47. *See* Stip. at 3. He cashed in the IRA believing he could use the proceeds to pay the balance of his chapter 13 plan (approximately $19,263 at that time).[2] *See* Tr. at 17. When asked "why did you cash it out at that time," he responded, "we thought we were going to be sending a check to settle the bankruptcy." *Id.* At trial he noted that he is still in possession of the $26,236.47. *Id.*

Just when the Sorrells sought to pay the balance due under their plan, the trustee moved to modify the plan to require additional funding to yield one hundred percent as the dividend to Mr. Sorrells's creditors' claims. *See* ECF Doc. No. 40. The debtors filed a response in opposition. *See* ECF Doc. No. 41. At the initial hearing on her motion, the trustee requested a continuance with leave to amend her motion as well as to conduct discovery. The debtors consented to her

---

2  According to the joint stipulation, as of May 2025, the balance of plan payments total $14,913. *See* Stip. at 2. Assuming in February the debtors would have owed three payments more than they owed in May, the balance as of February would have been approximately $19,263 ($1,450 x 3 + $14,913).

requests. The Court continued the hearing. *See* ECF Doc. Nos. 42–43. The trustee amended her motion and issued discovery. *See* ECF Doc. No. 46. The debtors filed further amended schedules and a response to the amended motion. *See* ECF Doc. Nos. 45, 47. After that, the Court held an evidentiary hearing on the amended motion and response. *See* ECF Doc. No. 51. Prior to the hearing, the parties submitted their joint stipulation of fact plus exhibits. *See* ECF Doc. Nos. 48–50. At the hearing, the trustee and debtors' counsel each examined Mr. Sorrells. At the conclusion of the evidence and arguments from counsel, the Court took the matter under advisement. *See* ECF Doc. No. 52.

## ANALYSIS

This case is not about a debtor seeking to retain all the proceeds from the liquidation of an inherited IRA rather than pay the proceeds to the trustee. This case is about how much of the proceeds the debtor should pay to the trustee. The debtors in this case wish to pay the proceeds to the trustee to pay the amount owed under their confirmed chapter 13 plan. The trustee moves for entry of an order that modifies the plan and requires the debtors to pay the amounts owed under their confirmed chapter 13 plan, plus all the proceeds from the inherited IRA, plus additional funds that Mr. Sorrells has a claim to but has not yet received. As explained below, the Court grants the modification in part and denies it in part.

The trustee moves to modify under section 1329(a)(1). That section provides:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; . . . .

11 U.S.C. § 1329(a)(1). After confirmation of the chapter 13 plan, section 1329(a) permits a modification ("the plan *may* be modified") to increase payments on claims, among other purposes.

*See* 11 U.S.C. § 1329(a)(1)–(4).  At the same time, after confirmation of the plan, section 1327 directs that the effect of confirmation "bind[s] the debtor and each creditor" and "vests all of the property of the estate in the debtor[,] . . . free and clear of any claim or interest of any creditor provided for by the plan."  11 U.S.C. § 1327.  These two sections are in tension.  On the one hand, after confirmation, at the request of an unsecured creditor or the trustee, the plan may be modified to increase the amount of payments on claims of creditors.  On the other hand, those creditors are bound by the provisions of the confirmed plan which precludes them from objecting to the plan terms after confirmation.  Thus, the rub.

The Fourth Circuit reconciled this tension explaining that a substantial and unanticipated change in financial condition is an exception to the *res judicata* effect of confirmation.  "The doctrine of *res judicata* prevents modification of a confirmed plan . . . unless the party seeking modification demonstrates[3] that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition."  *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 149 (4th Cir. 2007) (citing *Arnold v. Weast (In re Arnold)*, 869 F.2d 240, 244 (4th Cir. 1989)).  And more to the point:

> If the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of *res judicata* will prevent the modification of the confirmed plan.  However, if the debtor experienced both a substantial and unanticipated change in his post-confirmation financial condition, then the bankruptcy court can proceed to inquire whether the proposed modification is limited to the circumstances provided by § 1329(a).  If the proposed modification meets one of the circumstances listed in § 1329(a), then the bankruptcy court can turn to the question of whether the proposed modification complies with § 1329(b)(1).

*Id*. at 150.

Guided by the Fourth Circuit, if there has been a substantial change in a debtor's financial

---

[3] Stated differently, the party seeking modification bears the burden of proof for approval of the modification.

condition and the substantial change was unanticipated, this Court may consider a modification to the confirmed plan upon the request of an unsecured creditor or the chapter 13 trustee.[4]  If not both substantial and unanticipated, the modification must be denied.  Hence, it is not simply whether property was acquired postpetition, even if that property is property of the estate, that dictates if a court should approve a modification postconfirmation.  If the receipt of postpetition property is all that matters, section 1327 is meaningless.  An individual debtor naturally will acquire personal property during his three-to-five-year plan term and naturally will consume and dispose of it in the course of his life during that period.  He may do so (within the terms of his confirmed plan) free from the interests of his creditors, who are bound by his confirmed chapter 13 plan.

Chapter 13 of the Bankruptcy Code is structured to facilitate its application as an alternative to chapter 7 liquidation:  an individual who has regular income, and is within certain debt limits, may voluntarily choose to live under a budget for three to five years so that he can pay a certain amount to his creditors (not less than they would receive if he had filed chapter 7) over that period.[5]  The debtor may acquire property during that term, and unless ordered otherwise it will vest in the debtor free of creditor claims.  11 U.S.C. § 1327.  The property therefore is the debtor's to use, lease, or sell, exclusive of the trustee, free from the claims of creditors.[6]  11 U.S.C. §§ 363, 1303, 1327; *see also Trantham v. Tate*, 112 F.4th 223, 231 (4th Cir. 2024).  To the extent property of

---

[4]    It is unclear whether Bankruptcy Code section 1329(c) limits the modification of a confirmed plan, over the debtor's objection, based on changes in the debtor's financial condition that occur *outside* the statutory applicable commitment period.  *See* 11 U.S.C. § 1329(c) ("A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) . . . .").  The Court does not address this question because the Sorrells request the existing plan term (exceeding the statutory applicable commitment period) remain unmodified and the trustee's proposed modification does not exceed the term of the confirmed plan.

[5]    The amount to be paid to his creditors will be set by the plan and order confirming that plan.

[6]    Many courts, including in this district, have imposed local rules, standing orders, provisions in form chapter 13 plans, or terms in orders confirming plans that, notwithstanding the vesting of such property in the debtor, impose a requirement upon a debtor to obtain an order from a bankruptcy court before selling real property.

the estate did not vest in the debtor after confirmation of the plan, the debtor retains the right, exclusive of the trustee, to use, lease, or sell it within the limits of section 363. These features of the Code are key to implementation of chapter 13. Logically, and to facilitate the alternative to chapter 7 liquidation, the Code grants only the chapter 13 debtor rights to his property and grants to the chapter 13 trustee the express duty to assist the debtor to complete his plan.[7] 11 U.S.C. §§ 363, 1302, 1303. Consequently, the acquisition of property postconfirmation does not compel modification of the plan.

While the acquisition of property after confirmation of a chapter 13 plan is anticipated, the amount or impact of its acquisition on the debtor's overall financial condition may, under some circumstances, be unanticipated. "A change is unanticipated if the debtor's present financial

---

[7] These Code provisions implement the congressional intent to provide an alternative to chapter 7 liquidation, an alternative which provides greater recovery for creditors than a liquidation with greater flexibility and discharge options for debtors. Under pre-Code law, an individual had no such choice until the 1930s when Congress enacted amendments to the 1898 Bankruptcy Act to allow an individual to file a "wage earner plan" (the precursor to a chapter 13 plan) in lieu of "bankruptcy." *See* An Act §§ 73, 74, ch. 204, 47 Stat. 1467, 1467–70 (1933) [hereinafter "the 1933 Amendments"]. The 1933 Amendments expressly excluded the appointment of a trustee (who would have assumed title to the debtor's property) so that the debtor could retain his property. *See* Bankruptcy Act of 1898 §§ 47–49, ch. 541, 30 Stat. 544, *repealed by* Pub. L. No. 95-598, 92 Stat. 2549 (1978) (trustees were vested with title to all property of the debtor and were required to collect and liquidate the property). This left the debtor, his attorney, or the court as the disbursing agent for the wage earner plan. If the plan was confirmed, the payments were disbursed and the case was dismissed. The court had no jurisdiction over future earnings and could not enforce a plan that contemplated future payments (so all payments had to be made by the time of confirmation). *See* 1933 Amendments § 74(e). During the plan term, the debtor had little protection from creditor collection actions. *See* Bankruptcy Act of 1898 § 11(a) (only actions *pending* when a petition was filed could be stayed; there was no stay of postpetition collection actions). In 1938, Congress passed further amendments ("the Chandler Act") that among other things permitted a court (upon request) to stay the commencement and the continuation of creditor collection action against the debtor, his property, and especially his postpetition income. Chandler Act § 614, ch. 575, 52 Stat. 840, 931 (1938). With further amendments after the 1930s and with the enactment of the 1978 Bankruptcy Code, Congress improved the option through, among other things, the appointment of a chapter 13 trustee who would serve as disbursing agent of the plan payments but who had no right to the debtor's property or duty to collect estate property; the imposition of an automatic stay of actions against the debtor and property of the debtor and property of the estate; and provision that the debtor's postpetition property would be property of the estate but would not be delivered to the trustee and hence would remain in the debtor's possession and control under the protection of the court. These Code provisions among others set forth a foundation to enable an individual with income to accomplish a multiyear payment plan. Additional reference and support for the information in this paragraph may be found in the following articles: Vincent L. Leibell, Jr., *The Chandler Act—Its Effect upon the Law of Bankruptcy*, 9 FORDHAM L. REV. 380 (1940), Frederick Woodbridge, *Wage Earners' Plans in the Federal Courts*, 26 MINN. L. REV. 775 (1942), William E. McCarty, *Wage Earners' Plan—Chapter XIII*, 45 MARQ. L. REV. 582 (1962), and Charles Jordan Tabb, *The History of the Bankruptcy Laws in the United States*, 3 ABI L. REV. 5 (1995).

condition could not have been reasonably anticipated at the time the plan was confirmed." *Murphy*, 474 F.3d at 149. In *Murphy*, the debtor disclosed the value of his condominium and its equity on his bankruptcy petition. He then sold the condominium eleven months after that. In those eleven months, the value had increased over fifty-one percent. *Id.* at 152. Finding that the trustee could not have anticipated before confirmation of the plan that the value of the asset would increase over fifty percent within the next eleven months, the Fourth Circuit concluded the resulting sale of that asset at the selling price was not anticipated and the receipt of the net sale proceeds rendered a substantial change in the debtor's financial condition (noting however that if it had been a twenty-five percent increase in the value "Murphy's position [opposing modification] would be stronger"). *Id.* The change was not the presence of the increased equity; the change in financial condition was the receipt of the proceeds without any corresponding increase in the expenses or liabilities of the debtor. *See id.* ("his financial condition substantially changed with the receipt of this income"). In this way, Mr. Murphy had a substantial change in his financial condition that was unanticipated, and thus confirmation of the plan did not preclude the trustee from moving to modify the plan to increase payments to holders of allowed unsecured claims.

Unlike Mr. Murphy, whether Mr. and Mrs. Sorrells experienced a substantial and unanticipated change in financial condition is a close call. From the debtor's perspective, the receipt of $26,236 at a time when he owed nearly $20,000 on his chapter 13 plan did not render a substantial improvement of his financial condition. His regular income[8] and living expenses had not changed largely after confirmation, with "not much" as he put it "left over at the end of each paycheck," no savings, and no excess disposable income. Tr. at 37. In addition, Mr. Sorrells has

---

[8]   Mr. Sorrells described how his barbecue business was unsuccessful, and postpetition he stopped his self-employment operation and began working full time as a cook at the restaurant where he had previously worked parttime. Tr. at 30–33.

not yet received any other liquid asset from his mother's estate and has no control over the timing of any potential receipt. On the flipside, from the trustee's perspective, the receipt of $26,236 was a substantial change because at the time when the debtors' regular income was sufficiently steady to permit them to make their regular plan payments without any savings or liquid assets, Mr. Sorrells suddenly acquired $26,236 cash without a corresponding increase in liabilities. In addition, the trustee points to Mr. Sorrells's interest in and claim to his mother's estate (estimated as of information known at the time of trial to be approximately $53,315)[9] to argue Mr. Sorrells has experienced a substantial change in his financial condition.

*Did Mr. Sorrells have an unanticipated change in his financial condition?*

Mr. Sorrells inherited property after confirmation. When he filed his original schedules, he did not disclose this inheritance although he noted a generic placeholder interest[10] in, among other things, "potential funds due to debtor, unknown at this time, including . . . inheritance" and estimated the asset at "$1.00." Later, after confirmation of the plan and after the death of his mother, he amended his schedules to provide information about the inherited IRA and the claim to his mother's estate. *See* Ex. 7f at 9, ECF Doc. No. 49-6; Ex. 7g at 9, ECF Doc. No. 49-7. The trustee makes much of the timing (suggesting that the debtor has withheld information) but the record shows the debtor has been forthcoming and transparent.[11] More importantly, he has complied with the Code and the Rules.[12]

---

[9] The parties stipulated Mr. Sorrells "is entitled to 1/3 of the residue and remainder of the estate after all expenses and distributions have been completed, which is approximately $53,315, based upon the information known at this time." Stip. at 5.

[10] In their Schedule A/B, Mr. and Mrs. Sorrells listed "Potential funds due to debtor, unknown at this time, including State and Federal Tax refunds, possible garnishment funds, insurance proceeds, proceeds related to claims or causes of action that may be asserted by the debtor, any claim for earned but unpaid wages, and/or inheritance." *See* Ex. 7b at 15, ECF Doc. No. 49-2.

[11] The debtor was refreshingly honest and credible during his testimony.

[12] *See* 11 U.S.C. § 521(a); Fed. R. Bankr. P. 1007. The trustee argued that chapter 13 debtors have a "duty to disclose" the receipt of postpetition assets under Bankruptcy Rule 4002, either as an unwritten but somehow understood subsection of the rule, or implicitly baked into the text of subsection (a)(4) dealing with unrelated tasks

Because he disclosed only $1.00 as the value of his potential interest in an inheritance, the amount of the proceeds he received from the inherited IRA appears to be greater than was reasonably anticipated when Mr. Sorrells filed his chapter 13 petition in December 2021. Mr. Sorrells's mother died in June 2024. Stip. at 3. Mr. Sorrells admitted that he did not know what assets his mother held, what debts his mother had, or what amount he could likely expect from an inheritance. Tr. at 22. He noted that the contents of the will and its provision giving him a one-third interest was a surprise. *Id.* at 21–22. Based on Mr. Sorrells's testimony, the Court is satisfied that the receipt of the IRA was unanticipated.

*Did Mr. Sorrells experience a substantial change in his financial condition?*

To determine if a change is a "substantial" change to the debtors' financial condition requires the Court to evaluate the debtors' financial condition as a whole in order to measure the impact and determine if a change has occurred that is substantial or insubstantial to their overall financial condition. For Mr. and Mrs. Sorrells, their overall financial condition has not changed extensively; the receipt of the inherited IRA is hardly a windfall. The Sorrells' house is over forty years old with significant deferred maintenance; the Sorrells' vehicles are old[13] and as such will need maintenance and likely replacement; the Sorrells live within a modest budget without any excess savings or luxury expenditures (no vacations and no recreation). *Id.* at 37–38. Their employment income has realized only a modest increase since they filed their petition. *Id.* at 32–33. In Mr. Sorrells's words, "[w]e've been able to make the [plan] payments. And I mean, it was pretty tight at first, and then we adjusted, and then when it moved to $1,450[,] [t]here was a

---

requiring cooperation with a trustee. But nothing in Rule 4002 directs a chapter 13 debtor to disclose property acquired by the debtor after confirmation of the plan. Indeed, Mr. Sorrells has complied with the terms of Rule 4002, has complied with his plan obligations, and has complied with the requests of the trustee during this contested matter. Moreover, nothing in the record in this case shows that Mr. Sorrells has failed to cooperate with the chapter 13 trustee's postconfirmation statutory duties. *See* 11 U.S.C. § 1302(b)(2)(C), (b)(4), (b)(6).

[13] Mrs. Sorrells drives a 2000 Ford Ranger and Mr. Sorrells drives a 2017 F-250. Tr. at 35.

little adjustment there, but we, we got through it. We, we managed to, to pay it." *Id.* at 33.

While their budget is modest, and tight, they have "managed." They have no money "at the end of each paycheck." *Id.* at 38. Their financial condition is stable ("[W]e've been able to make the payments. . . . [W]e managed . . . ."). *Id.* at 33. Yet they are now in receipt of $26,236 cash income without a commensurate increase in liabilities, albeit (as explained below) with a need to expend some of that income on household maintenance needs, including critical immediate needs. Because Mr. Sorrells has received the income, and because he has not encountered an increase in liabilities or expenses commensurate with the increased income, the Court finds Mr. Sorrells has experienced a substantial change in his financial condition. By contrast, had the IRA remained in an illiquid form, it would not render the same effect on his financial condition. He would not have received any income from which to fund a plan. *Cf. Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1132 (4th Cir. 1995) (because debtor was not withdrawing income from pension or retirement asset, court should not impute hypothetical income from the retirement asset when considering chapter 13 plan confirmation requirements). Likewise, an expectancy or a claim to funds in an indeterminate amount, at an indeterminate date, is similarly illiquid and does not sufficiently provide a basis to pierce the *res judicata* effect of plan confirmation. *See Murphy*, 474 F.3d at 152 (financial condition substantially changed with the receipt of income). For these reasons, the fact that Mr. Sorrells is an heir to his mother's estate and has a claim to an inheritance that he has not received yet does not pierce the *res judicata* effect of plan confirmation.

The trustee contends that the fact that the claim to inheritance is property of the estate means it must be converted for payment to creditors. She cites the Fourth Circuit's ruling in *Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013), as support for her contention. *See* Am. Mot. ¶ 33, ECF Doc. No. 46. Yet the question before the Fourth Circuit in *Carroll v. Logan* was *whether* an

inheritance was property of the estate. The debtor contended it was not property of the estate and the trustee contended it was. The Fourth Circuit was asked to answer that question, which it did. In this case, the parties are not disputing whether the claim to the inheritance is property of the estate. The parties dispute whether the debtors must modify the plan to increase payments to unsecured creditors based in part on a claim to an inheritance that has not yet been liquidated. The Court concludes the claim to an inheritance that has not been liquidated does not pierce the *res judicata* effect of plan confirmation. The creditors are still bound by the plan, as is the debtor, even though after confirmation of the plan the debtor acquired an expectancy or inchoate claim to an inheritance.

*Does the modification comply with section 1329?*

Having determined that Mr. Sorrells experienced a substantial and unanticipated change in his financial condition by the receipt of the $26,236, the trustee is not precluded by *res judicata* from seeking to modify the plan. The next consideration is whether the Court should approve the modification.

*1329(a)*

The modification must fall within the scope of permissible modifications under section 1329(a). Specifically, after confirmation of a plan and before completion of payments under such plan, the plan may be modified to "increase or reduce the amount of payments on claims of a particular class provided for by the plan," among other options. 11 U.S.C. § 1329(a)(1).

The trustee proposes a modification to increase the amount of payments to holders of allowed unsecured claims. Her proposed modification is one of the possibilities identified in section 1329(a).

*1329(b)*

It is not enough to simply meet the statutory purpose for a plan modification delineated in section 1329(a). Plan modification is constrained by section 1329(b) which means the proposed modification must comply with the confirmation requirements of section 1325(a).

*Does the modification meet the requirements of section 1325(a)?*

The trustee requests the plan be modified to provide for a lump sum payment of $30,000 in addition to the payments already due under the confirmed plan. Tr. at 42. In addition to the ten more payments of $1,450 required by their confirmed plan, Mr. and Mrs. Sorrells must pay on top of that $30,000 to the trustee, if the Court approves the modification. This modification meets the criteria of section 1325(a)(1)–(5), but it does not meet the criteria of section 1325(a)(6).

Section 1325(a)(1) requires a plan to comply with the provisions of chapter 13 and applicable provisions of title 11. The proposed modification (adding a lump sum to the amounts already required under the plan) generally complies with chapter 13 and applicable provisions of title 11. The requested modification is not proposing that the plan do something a chapter 13 plan cannot do. The modification satisfies section 1325(a)(1).

Section 1325(a)(2) requires that all filing fees and related court charges have been paid prior to confirmation. All such fees and charges were paid prior to confirmation and the modification does not change that. The modification fulfills section 1325(a)(2).

Section 1325(a)(3) requires that the plan has been proposed in good faith. With respect to a modification, this means the Court must find that the proponent has sought the modification in good faith. Here, the trustee moves to modify for the purpose of increasing the payment to unsecured creditors, something that is consistent with the statutory authorization for modification. Although the trustee's rhetoric in her motion and argument is disproportionate to the facts, her purpose is within the statutory purpose of modifications. Despite the tenor of her argument, the

Court concludes the trustee's motion to modify was not driven by ill will or an improper purpose. The Court concludes the modification was proposed in good faith.[14]

The section 1325(a)(4) requirement is often called the "liquidation test" and sometimes called "the chapter 7 test." Under section 1324(a)(4), the "value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title," or the "liquidation test." If the plan renders to holders of allowed unsecured claims amounts ("value as of the effective date of the plan") not less than those creditors would receive had the debtor filed chapter 7 instead of chapter 13 (and the other criteria of section 1325(a) are met), then the court must confirm the plan. When the court confirms the plan, therefore, the "value as of the effective date of the plan" of amounts to be paid to holders of allowed unsecured claims is not less than if the debtor had filed chapter 7 and his estate liquidated. Postconfirmation, a modification may alter the amounts to be paid to creditors, but for the modification to be approved, it must not reduce those amounts below what the liquidation test required for the plan to be confirmed in the first place. The modification proposed by the trustee is not a plan, but a modification to the confirmed plan. After all, the trustee cannot propose a chapter 13 plan. *See* 11 U.S.C. § 1321. While a chapter 13 trustee may have statutory authority to seek a modification of certain terms of a confirmed plan, the trustee cannot file a new plan. *See* 11 U.S.C. §§ 1321, 1329. As a result, the trustee's proposed modification is not a new plan and so does not change the "effective date of the plan." All of this means that for a modification to be approved, the modification must meet the liquidation test as of the effective date of the plan

---

[14] The Code requires the modification to comply with section 1325(a)(3). Logically it is the proponent of a modification who must show that the proposed modification is made in good faith. *See Murphy*, 474 F.3d at 149.

(not as of the date of modification).[15] Here, the trustee's proposed modification seeks to increase the amount to be paid to unsecured creditors from the amount they were to be paid under the confirmed plan. As such, the modification provides to holders of allowed unsecured claims more than they would receive had the debtors filed chapter 7 instead of chapter 13. The trustee's modification meets the requirement of section 1325(a)(4).

Section 1325(a)(5) addresses the claims of secured creditors. As the proposed modification does not alter the treatment of any secured claims, section 1325(a)(5) is not material to approval of this modification.

Section 1325(a)(6) requires the debtor to be able to make all payments under the plan and comply with the plan. The Court confirmed the Sorrells' chapter 13 plan because the Court was satisfied that they could make all payments under the plan and comply with the plan. And they have. The modification is proposing a change in those payments. For the Court to approve the plan, the Court must be satisfied that the Sorrells can make all the payments under the modification and comply with it. The Court finds this requirement not met entirely. For the modification to be feasible, the debtor must have income that is sufficiently stable from which they can make the payments. Merely holding a nonliquid asset or a claim (a right to payment) is not enough; the debtor must be able to make the payments under the plan as modified to render the modification feasible. *See Murphy*, 474 F.3d at 152.

Mr. Sorrells received the proceeds from the liquidation of the IRA when he had immediate critical household needs plus overdue maintenance. Mr. Sorrells testified that he has the immediate need for $750 for his truck to pass inspection by end of the month, a need to repair their

---

[15] Congress used the term "effective date of the plan" in section 1325(a)(4) and used the term "modification" distinct from "plan," in section 1329(b). The Court must presume that Congress means what it says and says what it means through the passage of statutes. *United States v. TechDyn Sys. Corp. (In re TechDyn Sys. Corp.)*, 235 B.R. 857, 864 (Bankr. E.D. Va. 1999).

home furnace before it can be used ($500), and a need to replace it promptly ($2,000). Tr. at 33–34, 36. He described a need to repair his garage door ($250–$300), plus a need for guttering ("probably a $3,000, $4,000 job") and paving of his driveway ("our driveway needs to be repaired . . . sinking . . . in one section of it") at a cost of "anywhere from $7,000 to $10,000." *Id.* at 34–35. He further described the desire to replace sixteen windows as well as other home maintenance. *Id.* at 35. He estimated the cost of approximately $20,000 for the windows. *Id.* Mr. Sorrells's testimony about these costs was uncontroverted.

The combined amounts for his maintenance needs range from $31,500 to $37,050. Based on his characterization of these expenses during his testimony, the Court finds the car repair, furnace, and driveway as immediate critical needs. The amounts needed for these immediate critical needs total from $8,250 ($750 + $500 + $7,000) to $12,750 ($750 + $2,000 + $10,000) based on his testimony.

Absent the receipt of the proceeds from the IRA, Mr. and Mrs. Sorrells have no available savings or cash to meet these household expenses. *Id.* at 37. And so, although he received $26,236, the Court finds he must use $11,250 of those proceeds to meet the family needs for transportation ($750), heat ($500), and safety ($10,000 driveway repair). For this reason, the Court will approve a modification to the extent of $14,986 ($26,236 - $11,250) to be added to the amounts due under the confirmed chapter 13 plan. The Court is persuaded that the other household costs that Mr. Sorrells described are not immediate safety concerns and as such may be addressed when funds become available or after completion of the plan within the upcoming months.

## CONCLUSION

The Court will issue an order consistent with the conclusions in this Opinion. The order

will direct a modification to increase by $14,986 the plan amounts due as of the date of this ruling.

The Clerk is directed to send a copy of this Memorandum Opinion to the debtors, counsel for the debtors, and the trustee.